**Robert V. MOSER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–84–094–CR.**

Court of Appeals of Texas, Austin.

April 10, 1985.

**24**

Terrey Cobb, J.W. Howeth, Austin, for appellant.

Ken Oden, Co. Atty., Claire Dawson-Brown, Asst. Co. Atty., Austin, for appellee.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

PER CURIAM.

The trial court found appellant guilty of failing to maintain financial responsibility for a motor vehicle and assessed punishment at a fine of $200. Tex.Rev.Civ.Stat. Ann. art. 6701h, §§ 1A and 1C (Supp. 1985).[1] Because we find no merit in appellant's contention that the complaint upon which he was tried is fundamentally defective, we affirm the judgment of conviction.

The complaint alleges that on or about July 8, 1982, appellant:

---

1. Article 6701h is also known as the Safety Responsibility Law. All statutory references in this opinion are to Tex.Rev.Civ.Stat.Ann. art. 6701h (Supp.1985) unless otherwise indicated.

did drive and operate a motor vehicle upon a public street ... [in Austin], to-wit: Lamar river bridge and did fail to maintain financial responsibility to insure against potential losses which may arise out of the operation of said vehicle.

In his first ground of error, appellant contends the complaint is defective for failing to allege a culpable mental state.

Section 1(10) defines "proof of financial responsibility" as:

Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the following amounts: ...

Section 1A(a) reads as follows:

On or after January 1, 1982, no motor vehicle may be operated in this State unless a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential losses which may arise out of the operation of that vehicle.[2]

Section 1C provides:

Failure to maintain financial responsibility as defined in Section 1(10) of this Act is a Class C misdemeanor, punishable by a fine of not less than Seventy-five Dollars ($75). Subsequent offenses shall be Class B misdemeanors, punishable by a fine of not less than Two Hundred Dollars ($200).

Section 1C does not expressly prescribe a culpable mental state. This does not answer appellant's contention, however, because a culpable mental state is required for every criminal offense unless the definition of the offense plainly dispenses with any mental element. Tex.Pen.Code Ann. §§ 6.02 and 1.03(b) (1974). It is to this issue we now turn.

It is clear, as appellant concedes in his brief, that the Legislature intended to subject both owners and operators of motor vehicles to prosecution under § 1C for failing to maintain financial responsibility. Not only is it the operation of a motor vehicle that triggers the necessity for liability insurance under § 1A, but § 1B requires "every owner and/or operator ... as a condition of driving, to furnish, upon request, evidence of financial responsibility...." In addition, § 1D–2 provides that it is a defense to prosecution for failure to maintain financial responsibility that the vehicle being driven by the accused was in his possession for the sole purpose of maintenance or repair, and was not owned in whole or in part by the accused. Such a provision would be unnecessary if § 1C did not otherwise apply to non-owner operators of motor vehicles. The fact that a conviction for failure to maintain financial responsibility carries with it the suspension of one's driver's license, as well as the motor vehicle's registration, also clearly indicates that criminal liability is to be based on operation, as well as ownership, of a motor vehicle. *See* § 1F.

It is because non-owner operators may be prosecuted under § 1C that appellant contends a culpable mental state is required. As appellant correctly points out, many motor vehicles are operated by persons other than the owner, as for example, employees of businesses maintaining a fleet of company-owned vehicles. Appellant argues it would be unfair to fine and suspend the driver's license of a non-owner operator of an uninsured motor vehicle who did not know the vehicle was uninsured, had a reasonable belief the vehicle was insured, and had not in any way assumed the responsibility of obtaining liability insurance for the vehicle. Thus, appellant

**2.** Section 1A(b) exempts certain vehicles from this requirement of liability insurance, including those for which a bond or certificate of deposit of a specified amount is on file and those that are self-insured. Also exempted are vehicles owned by various governmental entities, vehicles owned by volunteer fire departments, vehicles owned and operated by non-res-

idents that are only temporarily in this State, and implements of husbandry. It has been held these exemptions constitute defenses that need not be negated in the charging instrument. *Upchurch v. State*, 660 S.W.2d 891 (Tex.App.1983, pet. granted), and we agree. *See also* Tex.Pen. Code Ann. §§ 2.02 and 2.03 (1974). Appellant does not argue otherwise.

concludes the State must allege and prove the accused operated the motor vehicle with knowledge it was uninsured.

■ Appellant's argument would be convincing if the insurance required by §§ 1A and 1C were necessarily insurance covering the motor vehicle in question. Such is not the case. Section 21 of art. 6701h (1977 and Supp.1985) reads as follows:

(a) A "motor vehicle liability policy" as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified ... as proof of financial responsibility, and issued ... by an insurance company duly authorized to write motor vehicle liability insurance in this State, to or for the benefit of the person named therein as insured.

(b) Such owner's policy of liability insurance:

1. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is hereby to be granted; and

2. Shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles....

(c) Such operator's policy of liability insurance shall pay on behalf of the insured named therein all sums which the insured shall become legally obligated to pay as damages arising out of the use by him of any motor vehicle not owned by him....

Thus, the non-owner operator of a motor vehicle may, if necessary, take out a policy of operator's motor vehicle liability insurance in order to comply with §§ 1A and 1C.

■ In our opinion, the Safety Responsibility Law imposes a duty on all persons who own and/or operate a motor vehicle in this State to make certain that proof of financial responsibility, in the form of an owner's or operator's motor vehicle liability insurance policy, is in effect to insure against potential losses which may arise out of the operation of the vehicle. This duty is implicit in § 1B's requirement that every owner and/or operator be prepared, as a condition of driving, to provide evidence of financial responsibility. If a potential non-owner operator is not certain that an owner's motor vehicle liability policy is in effect to insure against losses which may arise out of his operation of the vehicle, and he is not covered by an operator's motor vehicle liability policy, it is clear the Legislature intended that the vehicle in question not be operated.

■ In summary, we hold the definition of the offense prescribed by § 1C does plainly dispense with any mental element when that section is read in the context of the Safety Responsibility Law as a whole. Appellant's first ground of error is overruled.

■ In his second ground of error, appellant contends the complaint is fundamentally defective because it does not allege he failed to maintain financial responsibility at the time he operated the motor vehicle. This contention is also without merit. The complaint alleges that on the day in question appellant operated a motor vehicle *and* failed to maintain financial responsibility to insure against potential losses which might arise out of said operation. The only reasonable reading of the complaint is that the operation of the motor vehicle and the failure to maintain financial responsibility occurred simultaneously. The case relied on by appellant, *Allen v. State*, 148 Tex.Cr.R. 606, 190 S.W.2d 569 (1945), is both legally and grammatically distinguishable.

The judgment of conviction is affirmed.